UNITED STATES of America, Plaintiff,

v.

Javier OZUNA–FUENTES, Defendant.

Crim. No. 89–173–JB.

United States District Court, D. New Mexico.

April 2, 1991.

Robert Gorence, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff.

Teresa Storch, Asst. Federal Public Defender, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS COURT previously granted Defendant's motion to suppress evidence obtained as the result of a canine sniff of his vehicle. The Court of Appeals for the Tenth Circuit reversed. *United States v. Morales–Zamora*, 914 F.2d 200 (10th Cir. 1990). In its opinion, the court observed that this Court had assumed that the alleged purpose of the roadblock was valid. It declared, however, that its holding did not preclude the Defendant from arguing that the purpose of the roadblock was pre-

textual. The Defendant is now before the Court seeking to suppress the evidence alleging that the stop in this case was pretextual. The evidence now before the Court is the same evidence adduced at the previous hearing. The parties have submitted supplemental briefs on the pretextual issue.

It is the policy of the Socorro Police Department to conduct roadblocks within the city limits of Socorro on Interstate 25 for northbound traffic, and on US 60 for eastbound traffic. The stated purpose for the roadblock is to check for valid drivers' licenses, vehicle registrations, and proofs of insurance. It is this claimed purpose that Defendant contends is pretextual; that the real purpose behind the roadblocks is to submit vehicle traffic to inspection for narcotics.

The roadblock at issue was established at mile marker 147 just beyond the crest of a hill for northbound traffic.[1] There were three police vehicles on either side of the highway facing at an angle toward oncoming traffic with their headlights on and the top lights spinning. The roadblock was manned by six officers including Officer Ed Britt, a part-time police officer and owner of Britt Detection Agency, who worked as the dog handler. The officers, dressed in SWAT-type uniforms and armed with rifles and pistols, did not "look like policemen you see on city streets." The roadblock was never set up unless the dogs and their owner, Officer Britt, were available. Also, the funds to pay Britt Detection Agency for the use of the dogs come from a grant provided by the Federal Government for narcotics detection purposes. The sole purpose of having the dogs present at the roadblock was for drug detection. The dogs were not trained to detect anything but drugs.

On March 16, 1989, Javier Ozuna–Fuentes (Fuentes) was driving a van north on Interstate 25 accompanied by Jose Manuel Morales–Diaz when they encountered

---

1. The description of the roadblock was provided through the testimony of an attorney-private investigator Deborah Ruud. Although the appellate court in its opinion in *United States v. Morales–Zamora* described her encounter at the roadblock as occurring on a different day, the record reflects that she went through the identical roadblock on the same date at 8:00 PM, approximately one hour before the Defendant.

the Socorro Police Department roadblock at approximately 9:00 PM. While Defendant's van was fourth in line for the document inspection, Officer Britt was walking his two dogs down the side of the road inspecting the vehicles when one of the dogs alerted. Upon being released, the dog ran up to Defendant's van and started crawling underneath the vehicle. At that time the Defendants were removed from the vehicle and placed under arrest. A subsequent search revealed thirty pounds of marijuana in a false compartment under the van's chassis.

██ A "pretextual stop" occurs when police use a legal justification to make a stop in order to search a person or a vehicle for an unrelated serious crime for which they do not have reasonable suspicion necessary to support the stop. *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988). This Circuit has adopted the test established in the Eleventh Circuit for the courts to follow in determining whether an investigatory stop is unconstitutional:

> A court should ask not whether the officer *could* validly have made the stop, but whether under the same circumstances, a reasonable officer *would* have made the stop in the absence of the invalid purpose.

*Id.* at 1517.

Although this test clearly addresses the issue of a pretextual *arrest*, there is no circuit authority on the issue of a pretextual roadblock. The circuit court has observed, however, that a rigid "objective test that asks no more than whether some set of facts might justify a given stop would permit arbitrary intrusions and citizens would be subject to unfettered police discretion as to whom to stop." The court also has recognized that pretextual use of police power raises a problem of constitutional magnitude. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Applying this test to the facts as found by this Court, it concludes that the stated purpose of the roadblock was pretextual.

The Court does not believe that the purpose of the roadblock was to check for valid drivers' licenses, vehicle registrations, and proofs of insurance. Surely if this were the case, there would be no need for the police officers to be dressed in SWAT-type uniforms, armed with pistols and rifles. If the real purpose was as claimed by the Government, there would be no need to have the dogs present or to have them inspect each vehicle. And it is undisputed that on March 16, 1989, the dogs would check every vehicle coming through the roadblock. As testified to by Assistant Chief of Police Trujillo:

> The vehicles as they come to the roadblock are stopped at a stop sign and the dog and its handler would take anywhere from five to ten seconds to scan the front and the side of the vehicle and every vehicle is checked. The dog can check up to twenty cars while an officer is able just to check one driver.

Assistant Chief Trujillo also testified that on occasion a car was detained after the vehicle registration was completed in order to enable the dog to inspect the vehicle.[2] Even more telling is that the roadblock was never operated unless the dogs, trained solely in narcotics detection, were available. It is also worthy of note that the source of the funds to pay for the dogs was a federal grant provided for narcotics detection purposes. The Court, therefore, concludes that the stated purpose for the roadblock was pretextual; that the real purpose was to inspect all northbound vehicles for narcotics.

This Court is fully aware that this Circuit has previously dismissed Fourth Amendment challenges to brief roadblock detentions to check valid drivers' licenses, vehicle registrations, and proofs of insurance. But this is not such a case. Indeed, this case approaches the example mentioned by Justice Brennan where "law enforcement officers could release a trained cocaine-sensitive dog ... to roam the streets at random alerting the officers to people carrying cocaine." *United States v. Jacobsen*, 466 U.S. 109, 138, 104 S.Ct. 1652, 1669, 80

---

**2.** Witness Ruud testified that although the police had already checked her papers, she was not informed that she was free to leave until

after the dog had sniffed her car some two minutes later.

L.Ed.2d 85 (1984) (Brennan, J., dissenting). Here, the cocaine-sensitive dogs are roaming the highway at mile marker 147 on Interstate 25.

The Court having determined that the stated purpose for the roadblock was pretextual, Defendant's Fourth Amendment rights have been violated. Accordingly, Defendant's motion to suppress will be granted.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that Defendant's motion to suppress be, and it hereby is, GRANTED.